UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND M. WYLIE and <br> CYNTHIA WYLIE <br><br> Plaintiffs, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON <br> FKA THE BANK OF NEW YORK, AS <br> TRUSTEE FOR THE <br> CERTIFICATEHOLDERS CWABS, INC., <br> ASSET-BACKED CERTIFICATES, <br> SERIES 2006-12 <br><br> Defendant. | Civil action No. _____ <br><br> Judge: _____ <br><br> Magistrate:_____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

### I.   Introduction

1. This is the Complaint brought by individual consumers under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, declaratory judgment, 28 U.S.C. § 2201, and pendent state law claims of Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* ("LUTPA").

### II.   Jurisdiction

2. Subject matter jurisdiction is founded on 28 U.S.C. § 1331 and 15 U.S.C. § 1692, *et seq.* and this court's supplemental jurisdiction under 28 U.S.C. § 1367. Venue is founded on 28 U.S.C. § 1391(d).

### III.     Parties

3.   Plaintiffs, RAYMOND M. WYLIE and CYNTHIA WYLIE (hereinafter the "Wylies") are natural persons who, at the time of the events leading up to the filing of this pleading, were residents of St. Charles Parish, Louisiana, and are alleged "debtors" as defined by the FDCPA, 15 U.S.C. § 1692a.

4.   Defendant THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-12 (hereinafter "Mellon") is a foreign corporation not authorized to do but doing business in the State of Louisiana. Additionally, Mellon is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a.

### IV.     Factual Allegations

5.   On April 28, 2006, the Wylies executed two mortgages with Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender, for a house located at 212 Betty Drive, Montz, Louisiana.  The first mortgage was in the amount of $184,000 and the second mortgage was in the amount of $46,000 (collectively, the "Mortgage Loan").  The Mortgage Loan stipulated that the mortgagor for the loans was the Mortgage Electronic Registration Systems, Inc. ("MERS"), and that MERS was to be the lender's nominee.  MERS is a separate corporation existing under the laws of Delaware; MERS was designed by banks, including CountryWide's successor, Bank of America, N.A., to act as a database to record ownership of, and entitlement to, the proceeds of the mortgage loans assigned to it.

6. The Mortgage Loan was securitized, a process whereby the right to payment was transferred to an asset-backed security, and ultimately transferred, upon information and belief, to CWABS, Inc., Asset-Backed Certificates, Series 2006-12 (the "Bond"). Then, each time the Bond, or any portion thereof, was sold, assigned, transferred or otherwise conveyed, MERS, as the nominee, was to record such transfer of ownership of the Wylies' Mortgage Loan. This would allow a third party to determine who is entitled to receive payment of the Wylies' Mortgage Loan. Not coincidentally, it would allow such third party to determine who is entitled to foreclose upon such Mortgage Loan.

7. According to the June 1, 2006 Pooling and Servicing Agreement that governs the Bond, the Depositor (CountryWide Home Loans, Inc.) was to sell, transfer, assign, set over and otherwise convey all right, title and interest in the deposited loans (including the Wylies' Mortgage Loan) to the Bond. Additionally, the Depositor was to deliver to the Bond's trustee, "the original Mortgage Note, endorsed by manual or facsimile signature in blank . . . with all intervening endorsements that show a complete chain of title of endorsement from the originator to the person endorsing the Mortgage Note. Or, if the original Mortgage Note has been lost or destroyed and not replaced, a lost note affidavit . . . and all such intervening endorsements." In short, Mellon was to receive a complete chain of title demonstrating all transfers, assignments and endorsements evidencing that it was entitled to receive payment of the Wylies' Mortgage Loan.

8. In or about January 2009, the Wylies fell behind with their mortgage payments and eventually defaulted on the mortgage. Despite several attempts to modify their mortgage, the Wylies were unsuccessful and have now moved out of the house.

9. On March 30, 2010, Mellon filed a Petition for Executory Process (the "Petition") foreclosing on the Wylies' Mortgage Loan, seeking $212,128.48 plus costs, fees and interest. Mellon was represented by the Baton Rouge, Louisiana law firm Seale, Smith, Zuber & Barnette. Attorney Charles K. Watts, a partner in such law firm, signed the Petition for Executory Process.

10. Included with the Petition was the Affidavit of Charles K. Watts, in which Attorney Watts testified on Mellon's behalf. Specifically, Attorney Watts attested to the fact that he was familiar with Mellon's accounts, and based on his personal knowledge, Mellon was entitled to foreclose and that every allegation in the Petition was true and accurate. Charles K. Watts' Affidavit was notarized by Mark C. Garrison, an Associate at Seale, Smith, Zuber & Barnette, or, Attorney Watts' employee. In other words, the foreclosing law firm swore that they were correct in taking the action they were taking, and presumably, that swearing represented the authentic act necessary to comply with Louisiana's Executory Process laws.

11. In support of the Petition, Mellon filed two Assignments of Mortgage, one from MERS transferring the Wylies' second mortgage ($46,000) to UM Acquisitions, LLC, and the second transferring that same mortgage from UM Acquisitions, LLC to UM Capital, LLC. Seemingly, these documents transferred the rights to the Wylies' second mortgage, but not the first. No other evidence, authentic or otherwise, was submitted by Mellon to demonstrate its standing to foreclose on the entirety of the Wylies' Mortgage Loan.

12. On August 10, 2011, the St. Charles Parish Sheriff sold the Wylies' house to Mellon – the only bidder – for $124,666.67. This leaves the Wylies liable for a potential deficiency judgment of $87,461.81.

### **First Claim for Relief – Unfair Debt Collection Practices**

13. Plaintiffs reallege paragraphs 1 – 12 as though fully set forth herein.

14. Plaintiffs are "debtors" as defined by the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692a.

15. Mellon is a "debt collector" as defined by the FDCPA, § 1692a because it availed itself of the Act in paragraph 10 of the Petition. Specifically, Mellon included the "mini-Miranda" warning: "This is an attempt to collect a debt by a debt collector. Any information will be used for that purpose." *Id.*

16. Mellon violated the FDCPA in one or more of the following ways:

    a) making false or misleading representations;

    b) communicating credit information which it knew to be false or should have known to be false;

    c) failing to disclose in the initial written communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose;

    d) failing to send Plaintiffs the information required by § 1692g(a);

    e) causing Plaintiffs' telephone to ring repeatedly or continuously with intent to annoy, abuse or harass Plaintiffs;

f) failing to cease communication with Plaintiffs after receiving written notice that Plaintiffs refused to pay the debt and/or that Plaintiffs wished further communication to cease;

g) communicating with Plaintiffs after learning that Plaintiffs were represented by an attorney on the debt and learning the attorney's name, address and telephone number;

h) continuing collection activities after receipt of Plaintiffs' dispute without sending validation of the debt; and/or

i) representing that Plaintiffs owed amounts that they did not owe.

17. As a result of Mellon's failure to comply with the requirements of the FDCPA, Plaintiffs have suffered actual damages, including economic loss, invasion of privacy, damage to reputation, interference with their normal and usual activities, worry, fear, distress, frustration, embarrassment, and humiliation, for which they seek damages in an amount to be determined by the jury, in addition to statutory damages in an amount to be determined by the Court.

18. Plaintiffs request their attorney fees pursuant to the FDCPA, § 1692k(a)(3).

**Second Claim for Relief – Unfair Trade Practices**

19. Plaintiffs reallege paragraphs 1 – 12 as though fully set forth herein.

20. Louisiana Revised Statute § 51:1409(A) reads in pertinent part:

Any person who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by any other person of an unfair or

deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

21. Under Louisiana Revised Statute 51:1401 *et seq.* actual damages not only includes monetary losses of the kind the Wylies suffered, but also includes damages for mental anguish, embarrassment and humiliation. *See Laurents v. Louisiana Mobile Homes, Inc.*, 689 So.2d 536 (La. App. 3 Cir. 2/5/97). Moreover, Louisiana Revised Statute 51:1405 calls for the payment of reasonable attorneys fees and costs in the event of an "ascertainable loss of money or moveable property."

22. The Wylies suffered an ascertainable loss of money as a result of Mellon's unfair and deceptive practice of foreclosing on their Mortgage Loan without having the standing to do so. Specifically, Mellon did not, and upon information and belief cannot, demonstrate a clear chain of title to the Mortgage Loan authorizing Mellon to foreclose, as is required both by Louisiana's Executory Process laws, as well as the Bond's governing rules. Moreover, Mellon submitted the Affidavit of its own lawyer to act as the authentic evidence required to comply the laws.

23. Under Louisiana law, wrongful foreclosure is tantamount to a violation of LUTPA. *See Levine v. First Nat'l Bank of Commerce*, 917 So.2d 1235, 1241, 05-106 (La. App. 5 Cir. 12/27/05), *reversed in part on other grounds*, 948 So.2d 1051, 2006-0394 (La. 12/15/06). And if a party lacked standing to foreclose, its foreclosure is therefore wrongful and hence, an unfair trade practice entitling the damaged party to relief.

24. As a direct consequence of Mellon's unfair and deceptive acts and practices, the Wylies have suffered both economic and emotional loss, including but not limited to mental

anguish, humiliation, embarrassment, loss of enjoyment of life and all other non-pecuniary damages.

### Third Claim for Relief – Declaratory Judgment (Assignments)

25. Plaintiffs reallege paragraphs 1 – 12 as though fully set forth herein.

26. Mellon failed to include adequate evidence to support its standing to foreclose on the Wylies' Mortgage Loan. Specifically, Mellon submitted two assignments unrelated to the first mortgage, and apparently submitted the affidavit of its attorney as the authentic evidence required to comply with Louisiana Code of Civil Procedure Article 2635.

27. It is well established that authentic evidence of assignments and endorsements of mortgage notes is required to support the use of executory process, and that banks cannot use executory process to enforce mortgage notes where such assignments are lost and/or no authentic evidence of the chain of assignments exists. *See Bankers Trust of California, N.A. v. Cooley*, 884 So. 2d 594, 595 (La. App. 1 Cir. 6/25/04).

28. In the Wylies' case, Mellon failed to present any evidence of assignments entitling it to foreclose upon the Wylies' Mortgage Loan. The two assignments submitted by Mellon are irrelevant red herrings insufficient to support the use of executory process.

29. Pursuant to 28 U.S.C. § 2201, this Court may declare that Mellon lacked standing to foreclose upon the Wylies' Mortgage Loan because it could not, and cannot produce authentic evidence of the assignments and/or endorsements to demonstrate the requisite chain of title. And further, this Court may declare that as a matter of law, no entity may foreclose upon any mortgage notes absent authentic evidence of the requisite chain of

title including each and every assignment, endorsement or transfer of such mortgage notes.

### Fourth Claim for Relief – Declaratory Judgment (Affidavit of Counsel)

30. Plaintiff reallege paragraphs 1 – 12 as though fully set forth herein.

31. In support of its foreclosure of the Wylies' home, Mellon submitted the Affidavit of Charles K. Watts, who signed on behalf of Mellon. Yet, Attorney Watts also signed the pleading commencing the executory process. As such, Attorney Watts testified in support of his own lawsuit. Moreover, Attorney Watts' Affidavit was notarized by Attorney Watt's Associate.

32. Recent developments in mortgage finance law have demonstrated the widespread use of "robo-signers," individuals who execute affidavits to support foreclosure or to demonstrate ownership of mortgage notes, despite the lack of personal knowledge. Courts throughout the country have determined that those affidavits - whose affiants lacked the personal knowledge they attested to - were insufficient to demonstrate ownership of mortgage notes, and entitlement to foreclose. Banks and mortgage companies have responded to this crisis by having their foreclosing attorneys execute the very same affidavits instead.

33. In this case, Attorney Watts is the counsel of record for Mellon in the foreclosure case, but also the primary witness in support thereof. Attorney Watts is not, upon information and belief, an employee of Mellon, much less an officer authorized to execute affidavits on Mellon's behalf. Consequently, his affidavit cannot be the authentic evidence necessary to support the use of executory process.

34. Pursuant to 28 U.S.C. § 2201, this Court may declare that Mellon failed to comply with Louisiana Code of Civil Procedure Article 2635 because the Affidavit of Charles K. Watts, Mellon's attorney, was not authentic evidence sufficient to support the use of executory process. Further, this Court may declare that no attorney representing a foreclosing entity may submit an affidavit in support of his or her client's petition for executory process, if that affidavit is intended to act as the authentic evidence to support such foreclosure.

WHEREFORE, Plaintiffs respectfully requests that the Court grant the following relief in their favor as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. General and special damages to be determined by the jury;
3. Statutory damages; and
4. Attorneys' fees.

On the Second Claim for Relief:

1. all economic loss;
2. all compensatory, statutory and punitive damages for mental anguish, humiliation, embarrassment, loss of enjoyment of life and all such other non-pecuniary damages that may be appropriate;
3. attorney's fees and court costs for prosecution of this action pursuant to La. R.S. § 51:1401 *et seq.*;
4. interest from the date of judicial demand; and

5. any and all other relief this Honorable Court deems just or equitable.

On the Third Claim for Relief:

1. A declaration that Mellon failed to produce authentic evidence of all mortgage assignments to prove the chain of title entitling Mellon to use executory process; and

2. A declaration that no entity may use executory process without the authentic evidence of mortgage assignments to prove the complete chain of title to the mortgage note at issue.

On the Fourth Claim for Relief:

1. A declaration that Mellon failed to produce authentic evidence necessary to support the use of executory process because the affidavit it submitted was executed by its attorney of record and such assignment was notarized by the attorney's employee; and

2. A declaration that no entity may rely upon its counsel of record's affidavit as authentic evidence to support the use of executory process.

On All Claims for Relief:

1. Costs and expenses incurred in the action; and

2. Such other and further relief as is appropriate.

PLAINTIFFS DEMAND A TRIAL BY JURY.

DATED this 15th day of September, 2011.              LAW OFFICES OF MARC R. MICHAUD

/s/ *Marc R. Michaud*
Marc R. Michaud, La. Bar No. 28962
700 Camp Street, Ste. 401
New Orleans, LA 70130
(504) 267-1657 (Telephone)
(504) 267-1656 (Facsimile)
marc@marcmichaudlaw.com (Email)