UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND M. WYLIE and CYNTHIA WYLIE** | **CIVIL NO. 11-2312** |
| **VERSUS** | |
| **THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-12** | **SECTION: G** |

### ORDER AND REASONS

Before the Court is Defendant The Bank of New York Mellon's ("Defendant") Motion for Judgment on the Pleadings, and in the Alternative, Motion for Summary Judgment.[1] Plaintiffs Raymond Wylie and his wife, Cynthia, ("Plaintiffs") filed their opposition on January 24, 2012,[2] and following leave of Court, Defendant filed its reply on February 3, 2012.[3] Having considered the motion, the response, the reply, and the applicable law, for the following reasons, the Court determines that it lacks subject matter jurisdiction over this action and will dismiss the case.

### I.  Background

*A.  Procedural Background*

Plaintiffs filed their Complaint in this action on September 15, 2011,[4] seeking to recover for Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA")[5] and the

---

[1] Rec Doc. 11.

[2] Rec. Doc. 12.

[3] Rec. Doc. 16.

[4] Rec. Doc. 1.

[5] 15 U.S.C. § 1692, *et. seq.*

Louisiana Unfair Trade Practices Act ("LUPTA").[6] Defendant filed its Answer on November 14, 2011.[7] On January 17, 2012, Defendant filed its Motion for Judgment on the Pleadings, and in the Alternative, Motion for Summary Judgment.[8] Plaintiffs then filed their Response in Opposition on January 24, 2012.[9] After requesting leave of this Court, Defendant filed its Reply on February 3, 2012.[10]

### B. *Factual Background*

On April 28, 2006, Plaintiffs executed two separate mortgages with Countrywide Homeloans for their home in the amounts of $184,000 and $46,000; only the first mortgage is at issue here.[11] As per the mortgage agreement, the mortgagor was the Mortgage Electronic Registration System ("MERS") that was tasked with keeping record of ownership and entitlement with regard to the property. The mortgage was subsequently securitized and packaged as part of a bond, a process of which MERS should have kept record in order to determine who would have the right to foreclose upon the property.[12] The bond became part of a trust in which Defendant was a trustee.[13]

Around January 2009, Plaintiffs concede that they fell behind in their mortgage payments and

---

[6] La. R.S. § 51:1401

[7] Rec. Doc. 8.

[8] Rec. Doc. 11.

[9] Rec. Doc. 12.

[10] Rec. Doc. 16.

[11] Rec. Doc. 11-1 at p. 2.

[12] Rec. Doc. 1.

[13] Rec. Doc. 12 at pp. 2-3.

eventually defaulted; they have since vacated the home. On March 30, 2010, Defendant filed a Petition for Executory Process to foreclose on the home, seeking $212,128.48, plus additional costs.[14] Defendant's attorney signed an affidavit asserting that his client, based upon his knowledge, had the right to foreclose on the property. Defendant provided the affidavit in order to comply with Louisiana's Executory Process laws. No other documents were submitted to establish Defendant's alleged right to foreclose. On August 12, 2010, the St. Charles Parish Sheriff sold the Plaintiffs' home to Defendant, the only bidder, for $124,666.67, a deficiency of $87,461.81 on the amount owed.[15]

Here, Plaintiffs seek relief under the FDCPA and LUPTA. Plaintiffs assert that Defendant failed to comply with the FDCPA by communicating false or misleading information, by failing to properly notify Plaintiffs, and for harassing them with phone calls. Plaintiffs' state law claims are based upon similar alleged actions, or lack thereof.[16] Additionally, Plaintiffs seek a declaratory judgment that the Defendant lacked standing to foreclose on the property. Defendant denies the claims and asserts numerous affirmative defenses. Among these defenses are the Plaintiffs' comparative negligence and fault, the Plaintiffs' failure to mitigate, laches, and res judicata.[17]

---

[14] This proceeding occurred in the 29th Judicial District Court of St. Charles Parish, under case number 71,140-C.

[15] This date is not entirely clear to the Court. In their Complaint, Plaintiffs state the date of this sale as August 10, 2011, but in their Statement of Uncontested Facts submitted with their Response in Opposition, Plaintiffs state this date as April 12, 2012. Defendant, however, states this date as April 12, 2010 in its Statement of Uncontested Facts submitted with its Motion. The Court suspects that this date, April 12, 2010, is the correct date, but the Court is not certain.

[16] Rec. Doc. 1.

[17] Rec. Doc. 8.

*C. The Pending Motion*

Defendant has moved for judgment on the pleadings, or in the alternative, for summary judgment, seeking dismissal of all of Plaintiffs' claims.[18] In Defendant's memorandum in support of its motion for summary judgment, it (1) seeks dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(c), arguing that no facts are in dispute here and that judgment can be rendered by looking to the pleadings and judicially noticed facts[19]; (2) seeks dismissal due to Plaintiffs' lack of standing to bring the claims and enforce the note, arguing that a motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1)[20]; and (3) seeks summary judgment, arguing that there is no genuine issue of material fact in dispute.[21]

Importantly, Defendant also argues that the Court should abstain from exercising jurisdiction pursuant to the *Rooker-Feldman* doctrine,[22] which "deprives federal courts of subject matter jurisdiction to review a final state court decision arising out of a judicial proceeding unless a federal statute specifically authorizes such review."[23] Defendant claims that the Plaintiffs' allegations could have and should have been brought in the state court proceeding and that they constitute an

---

[18] Rec. Doc. 11.

[19] Rec. Doc. 11-1 at p. 3.

[20] *Id.* at p. 4.

[21] *Id.* at p. 5.

[22] *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[23] *Union Planters Bank Nat'l Assoc. v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) ("Reduced to its essence, the *Rooker-Feldman* doctrine 'holds that inferior courts do not have the power to modify or reverse state court judgments.'") (citation omitted).

4

impermissible collateral attack on the state court order.[24] According to Defendant, "Plaintiffs' claims are directed to the validity of the Foreclosure Proceeding and/or Plaintiffs' obligations under the First Mortgage. Those claims were extinguished by the prior judicial sale."[25] Likewise, according to Defendant, Plaintiffs' claims are so "inextricably intertwined" with the state court judgment that they would require a review of that judgment and therefore cannot be reviewed by this Court.[26] Defendant also asserts that the case may not be relitigated because the judicial sale of the property invokes res judicata and collateral estoppel concerns.[27]

Defendant next argues that if this Court were to exercise jurisdiction over the claims presented, that Plaintiffs' claims fail as a matter of law.[28] Specifically, Defendant argues that Plaintiffs may not relitigate the executory proceeding or vacate the judicial sale through the instant lawsuit because Louisiana law provides only two avenues to defend against an order issuing a writ of seizure and sale in an executory proceeding: (1) an injunction to arrest the seizure and sale, and (2) appeal from the order directing the issuance of the writ.[29] Here, Defendants argue, Plaintiff pursued neither available avenue.[30] Defendant also alleges that Plaintiffs' argument that the Note

---

[24] Rec. Doc. 11-1 at pp. 6-7.

[25] *Id.* at p. 7.

[26] *Id.* (citing *Turner v. Cade*, No. 09-30469, 2009 WL 38177007, at *2 (5th Cir. Nov. 16, 2009) (citing *U.S. v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)).

[27] Memorandum in Support of Motion, Rec. Doc. 11-1 at p. 14.

[28] *Id.* at p. 8.

[29] *Id.* at pp. 8-9 (citing La. Code. Civ. Pro. art. 2642).

[30] *Id.* at p. 9.

was not properly assigned is erroneous,[31] that Plaintiffs fail to state a claim under FDCPA because Plaintiffs plead no facts to establish that Defendant is a "debt collector" under the FDCPA,[32] that Defendant is exempt from the LUTPA and therefore is not in violation,[33] and that Plaintiffs have stated no valid cause of action based upon Defendant's use of an affidavit supplied by Defendant's own foreclosure attorney as support for the state court foreclosure petition.[34]

Plaintiffs respond that they "do not seek to undo or re-litigate the foreclosure process, nor do they seek to unwind the sale of their home despite the Bank's fraudulent conduct,"[35] and thus, Plaintiffs claim, the *Rooker-Feldman* doctrine does not deprive this Court of jurisdiction to hear the case. According to Plaintiffs, the doctrine is a narrow one not implicated here; instead, Plaintiffs argue that only principles of preclusion are at play[36] and that their claims are independent from the underlying state court decision because they do not directly challenge that decision.[37] Additionally, on that basis, Plaintiffs allege that their claims are not "inextricably intertwined" with the state court judgment such that this Court lacks jurisdiction.[38]

Further, Plaintiffs argue that Defendant "knowingly and intentionally" violated Louisiana law

---

[31] *Id.*

[32] *Id.* at p. 11.

[33] *Id.* at p. 13.

[34] *Id.* at p. 14.

[35] Rec. Doc. 12 at p. 2.

[36] *Id.* at p. 9.

[37] *Id.* at p. 11.

[38] *Id.* at p. 9.

6

and is liable for money damages for its alleged violations, unfair trade practices, and unfair debt collection practices.[39] According to Plaintiffs, they have, in fact, asserted cognizable state and federal causes of action,[40] and Plaintiffs specifically respond to Defendant's arguments by arguing that Defendant is a "debt collector" for purposes of FDCPA,[41] that Defendant is not exempt from LUTPA,[42] and that the attorney affidavit did not constitute competent evidence to support the executory process.[43]

## II. Law and Analysis

Because federal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute, some basis must exist for a lawsuit to be brought in federal court.[44] A federal court is without authority if it lacks subject matter jurisdiction, and "[i]t is to be presumed that a cause lies outside this limited jurisdiction."[45] The party asserting jurisdiction bears

---

[39] *Id.* at p. 2.

[40] *See generally*, *id.*

[41] *Id.* at p. 11.

[42] *Id.* at p. 13.

[43] *Id.* at p. 14.

[44] *See Willy v. Coastal Corp.,* 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also*, *Stockman v. Fed. Election Comm'n.*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).

[45] *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799).

the burden to demonstrate that subject matter jurisdiction exists.[46]  Even were the parties to waive a lack of subject matter jurisdiction, they cannot do so,[47] and the court is "duty-bound" to examine subject matter jurisdiction.[48]  Furthermore, "the district court has substantial authority 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"[49]

Because this Court is without authority to hear the case if there exists no subject matter jurisdiction, in deciding this motion, the Court should first consider whether jurisdiction is lacking under the *Rooker-Feldman* doctrine.[50]

---

[46] *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936). *See also, Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[47] *Ziegler v. Champion Mortg. Co.*, 913 F.2d 228, 229 (5th Cir. 1990) (stating that the law is "well settled that the parties cannot waive a want of subject matter jurisdiction") (citing *Sosna v. Iowa*, 419 U.S. 393 (1975) (disallowing waiver by express agreement); *American Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951) (disallowing waiver by estoppel); *Mitchell v. Maurer*, 293 U.S. 237 (1934) (disallowing waiver by silent acquiescence); *Amco Constr. Co. v. Miss. State Building Comm'n*, 602 F.2d 730 (5th Cir.1979) (disallowing waiver by estoppel)).

[48] *Union Planters*, 369 F.3d at 460 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Weekly v. Morrow*, 204 F.3d 613, 615 & n. 6 (5th Cir. 2000)).

[49] *Carter v. Deutche Bank Nat'l Trust Co.*, No. 10-797, 2010 WL 3074323, at *1 (E.D. La. Aug. 2, 2010) (Vance, C.J.) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).  *See also*, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative. . . .").

[50] *See, e.g., Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted) (noting that subject matter jurisdiction must be considered "before any other challenge because the court must find jurisdiction before determining the validity of a claim").

### A. Rooker-Feldman *Doctrine*

The *Rooker-Feldman* doctrine denies federal courts subject matter jurisdiction to review or modify the final decisions of state courts unless there is a federal statute that specifically permits such a review.[51] Although the Supreme Court has cautioned that the doctrine is "confined to cases of the kind from which the doctrine acquired its name," it is fully applicable in such cases.[52] The doctrine prevents federal courts from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[53] When federal claims are "inextricably intertwined" with the challenged state court judgment, the judgment is collaterally attacked,[54] and the Fifth Circuit has held that "collateral attacks on state court judgements" implicate the *Rooker-Feldman* doctrine.[55]

Furthermore, the *Rooker-Feldman* doctrine is not circumvented by a party raising claims that were absent in the original proceeding or claims framed as original claims for relief if such claims are "inextricably intertwined" with the state judgment[56] because inextricably intertwined claims require the federal court "in essence" to review the state court decision.[57]

---

[51] *Union Planters*, 369 F.3d at 462.

[52] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[53] *Id.*

[54] *Weaver v. Tex. Capital Bank*, 660 F.3d 900, 904 (5th Cir. 2011).

[55] *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994); *Shepherd*, 23 F.3d at 924.

[56] *Shepherd*, 23 F.3d at 924.

[57] *Feldman*, 560 U.S. at 483.

The Fifth Circuit has acknowledged that courts often have difficulty determining "whether a state adjudication and a later federal action are so intertwined that the latter would amount to a review of the former."[58] Recent district court opinions acknowledge that the Fifth Circuit itself has yet to articulate its own definition of "inextricably intertwined," although the Fifth Circuit has previously held a court to be without subject matter jurisdiction where the plaintiff's contentions were "ground[ed] in some aspect" of the prior proceeding.[59] In the absence of a clearly defined standard, lower courts have adopted the popular position that "the phrase 'inextricably intertwined' only describes a conclusion that a federal claim asserts an injury whose source is the state court judgment."[60] Where claims are "inextricably intertwined" with the state court judgment, under the *Rooker-Feldman* doctrine, the federal court lacks jurisdiction to hear the claims.[61]

## B. *Application of the* Rooker-Feldman *Doctrine*

Here, Plaintiffs argue that the *Rooker-Feldman* doctrine is not applicable because Plaintiffs do not seek to review or overturn the state court's ruling, but rather seek to receive damages from

---

[58] *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003) (citing *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) ("there is, unfortunately, no bright line that separates a federal claim that is 'inextricably intertwined' with a state court judgment from a claim that is not so intertwined")).

[59] *Musslewhite v. State Bar of Tex.*, 32 F.3d 942, 947 (5th Cir. 1994).

[60] *Rainwater v. 21st Mortg. Corp.,* No. 1:09-CV-331, 2010 WL 1330624, at *2, n. 4 (E.D. Tex. Feb. 25, 2010) (citing *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006) and *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)); *Riley v. La. State Bar Ass'n*, No. 09-7710, 2010 WL 481227, at *1 (E.D. La. Feb. 3, 2010) (McNamara, J.).

[61] *Feldman*, 560 U.S. at 486-87.

Defendant for obtaining the foreclosure though fraud, in violation of the FDCPA and LUPTA.[62] However, as outlined above and as the Supreme Court and Fifth Circuit have made clear, claims that are "inextricably intertwined" may also be deemed to challenge a prior state court judgment such that the federal court lacks subject matter to hear the claims. That the claims presented in this lawsuit are framed as new claims does not mean that this Court will have jurisdiction over them. Therefore, the question here is whether Plaintiffs' claims that Defendant violated the FDCPA and LUPTA are inextricably intertwined with the state court action in which Defendant foreclosed on Plaintiffs' property.

Plaintiffs, largely relying upon an unpublished Sixth Circuit decision, allege that the claims are not inextricably intertwined and that jurisdiction is therefore proper here. In *Brown v. First Nationwide Mortgage Corporation*,[63] the case upon which Plaintiffs principally rely, the Sixth Circuit declined to apply the *Rooker-Feldman* doctrine where a plaintiff brought an action against a mortgagor for unfair practices, reasoning that the "source of the injury" was the behavior of the defendant rather than the state court decision itself and that, therefore, the federal action did not challenge the state court ruling.[64]

*Brown*, however was both outside this circuit and unpublished. The Fifth Circuit has found in similar context that claims deriving from a challenge to a foreclosure order are "inextricably intertwined with the state court's grant or denial of relief."[65] The Fifth Circuit has also, in an

---

[62] Rec. Doc. 12 at p. 10.

[63] 206 Fed. App'x. 436 (6th Cir. 2006).

[64] *Id.* at 439-40.

[65] *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) (constitutional claims).

11

unpublished opinion, applied the *Rooker-Feldman* doctrine and found a lack of subject matter jurisdiction over an action where the plaintiff sought to sue a mortgagor for damages, alleging constitutional violations, after a state court action terminated.[66] Additionally, unpublished Fifth Circuit decisions have held that claims for allegedly unlawful debt collection practices are related to the underlying state court judgment[67] and that a civil rights suit stemming from alleged violations in the execution of a foreclosure are inextricably intertwined with, and therefore a collateral attack on, the state court judgment.[68] Where there is a violation of process, such as in the unexecuted sale of immovable property, the Fifth Circuit has indicated that the "sole cause" of the injury is, indeed, the state court judgment.[69]

In each of these cases, the court focused on the "inextricably intertwined" language to invoke *Rooker-Feldman*, rather than considering whether the current federal action technically sought a reversal or modification of the state judgment.[70] Similarly, in a recent Eastern District of Louisiana case, the court concluded that the asserted claims of fraud, constitutional violations, and violations of federal law that occurred in the context of a foreclosure proceeding were inextricably intertwined

---

[66] *Pease v. First Nat'l Bank*, 335 F. App'x. 412, 415 (5th Cir. June 22, 2009).

[67] *Morris v. Am. Home Mortg. Servicing, Inc.*, No. 10-20854, 2011 WL 4448742, at *1 (5th Cir. Sept. 27, 2011).

[68] *Flores v. Citizens State Bank*, 132 F.3d 1457 (5th Cir. 1997); *Pease*, 335 F. App'x. 412 ("to the extent [plaintiff] is challenging the merits of the foreclosure, we will not entertain a collateral attack on the final judgment of a state court").

[69] *Turner v. Cade*, 354 Fed. App'x at 110.

[70] *See, e.g., Pease*, 335 Fed. App'x. at 415.

to that prior proceeding.[71] Although the plaintiff in that case had explicitly sought to overturn the state judgment, unlike Plaintiffs here, the court concluded that the claims were inextricably intertwined, suggesting that the claims would have been improperly before the court even had plaintiff sought independent relief.[72]

Additionally, other courts have explicitly held that a plaintiff who fails to raise procedural problems at the time of the state court action may forfeit his right to later federal review[73] and that claims solely for damages may be barred by *Rooker-Feldman*.[74] Just as a complainant "cannot re-litigate issues that should have been raised in state court and defeat the operation of the *Rooker-Feldman* doctrine by casting a complaint as a civil rights violation,"[75] a plaintiff should not be able to carefully structure his requested relief in order to collaterally attack a prior judgment. The state court had to find the procedural requirements met to allow the foreclosure. Although Plaintiffs do not seek to undo the foreclosure, the action before this Court seeks damages a result of the foreclosure proceeding, which would require this Court to review a final state court judgment. Any problems with the process utilized in the foreclosure proceeding are inextricably intertwined to that

---

[71] *See generally, Carter*, 2010 WL 3074323.

[72] *Id.*

[73] *Garry v. Geils*, 82 F.3d 1362, 1369 (5th Cir. 1996).

[74] *Id.* at 1370 ("While the plaintiffs now maintain that they are seeking only damages, this does not affect our conclusion that the *Rooker-Feldman* doctrine bars jurisdiction over their case."); *Lawson v. Fleming*, No. 10-0900, 2010 WL 2367470, at *4 (D. Colo. June 10, 2010) (finding that even a claim solely for damages is inextricably intertwined with the prior state judgment and would require a federal court to impermissibly review a state court judgment).

[75] *Riley v. La. State Bar Ass'n*, No. 06-30695, 214 Fed. App'x 456, 458 (5th Cir. Jan. 19, 2007).

proceeding, and they cannot now be argued before this Court. Because the claims presented in this case are inextricably intertwined with those of the prior state proceeding and resulting judgment, this Court lacks subject matter jurisdiction to hear the claims presented here under the *Rooker-Feldman* doctrine.

### III. Conclusion

Having found that the claims asserted here are inextricably intertwined with those asserted in the prior state proceeding and resulting judgment, this Court lacks jurisdiction over the present matter because, in order to address Plaintiffs' claims alleged here, this Court would be required to review a state court judgment, in contravention of the *Rooker-Feldman* doctrine. Therefore, the case must be dismissed for lack of subject matter jurisdiction. Having found that this Court lacks jurisdiction to hear the case, the Court lacks authority to address the other arguments advanced by Defendant and will not do so. Accordingly,

**IT IS HEREBY ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this __6th__ day of March, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**