UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND M. WYLIE and CYNTHIA WYLIE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2312** |
| **THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-12** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Raymond Wylie and Cynthia Wylie's ("Plaintiffs") Motion to Alter or Amend Judgment.[1] Defendant Bank of New York ("Defendant") filed its opposition on March 19, 2012.[2][3] Having considered the motion, the response, and the applicable law, for the following reasons, the Court determines that the judgment should not be altered and therefore will deny Plaintiff's motion.

## I.  Background

*A.  Procedural Background*

Plaintiffs filed their Complaint in this action on September 15, 2011,[4] seeking to recover for Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA")[5] and the

---

[1] Rec. Doc. 20.

[2] Rec. Doc. 22.

[3] Rec. Doc. 16.

[4] Rec. Doc. 1.

[5] 15 U.S.C. § 1692, *et. seq.*

1

Louisiana Unfair Trade Practices Act ("LUPTA").[6] Defendant filed its Answer on November 14, 2011.[7] On January 17, 2012, Defendant filed its Motion for Judgment on the Pleadings, and in the Alternative, Motion for Summary Judgment.[8] After consideration, this Court dismissed Plaintiffs' claims, finding a lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.[9] Plaintiffs subsequently filed the pending Motion to Alter or Amend Judgment on March 15, 2012,[10] seeking to alter or amend this Court's order finding a lack of subject matter jurisdiction for Plaintiffs' claims as to alleged violations of the FDCPA. Defendant filed its response in opposition on March 19, 2012.[11]

### B. *Factual Background*

On April 28, 2006, Plaintiffs executed two separate mortgages with Countrywide Homeloans for their home in the amounts of $184,000 and $46,000; only the first mortgage is at issue here.[12] As per the mortgage agreement, the mortgagor was the Mortgage Electronic Registration System ("MERS") that was tasked with keeping record of ownership and entitlement with regard to the property. The mortgage was subsequently securitized and packaged as part of a bond, a process of which MERS should have kept record in order to determine who would have the right to foreclose

---

[6] La. R.S. § 51:1401.

[7] Rec. Doc. 8.

[8] Rec. Doc. 11.

[9] Rec Doc. 18.

[10] Rec. Doc. 20.

[11] Rec. Doc. 22.

[12] Rec. Doc. 11-1 at p. 2.

upon the property.[13]  The bond became part of a trust in which Defendant was a trustee.[14]

Around January 2009, Plaintiffs concede that they fell behind in their mortgage payments and eventually defaulted; they have since vacated the home.  On March 30, 2010, Defendant filed a Petition for Executory Process to foreclose on the home, seeking $212,128.48, plus additional costs.[15] Defendant's attorney signed an affidavit asserting that his client, based upon his knowledge, had the right to foreclose on the property. Defendant provided the affidavit in order to comply with Louisiana's executory process laws.  No other documents were submitted to establish Defendant's alleged right to foreclose.  On August 12, 2010, the St. Charles Parish Sheriff sold the Plaintiffs' home to Defendant, the only bidder, for $124,666.67, a deficiency of $87,461.81 on the amount owed.[16]

In this action, Plaintiffs originally sought relief under the FDCPA and LUPTA. Specifically, Plaintiffs asserted that Defendant failed to comply with the FDCPA by communicating false or misleading information, by failing to properly notify Plaintiffs, and for harassing them with phone calls.  Plaintiffs' state law claims were based upon similar alleged actions, or lack thereof.[17] Additionally, Plaintiffs sought a declaratory judgment that Defendant lacked standing to foreclose

---

[13] Rec. Doc. 1.

[14] Rec. Doc. 12 at pp. 2-3.

[15] This proceeding occurred in the 29th Judicial District Court of St. Charles Parish, under case number 71,140-C.

[16] This date is not entirely clear to the Court.  In their Complaint, Plaintiffs state the date of this sale as August 10, 2011, but in their Statement of Uncontested Facts submitted with their Response in Opposition, Plaintiffs state this date as April 12, 2012.  Defendant, however, states this date as April 12, 2010 in its Statement of Uncontested Facts submitted with its Motion.  The Court suspects that this date, April 12, 2010, is the correct date, but the Court is not certain.

[17] Rec. Doc. 1.

on the property. Defendant denied the claims and asserted numerous affirmative defenses. Among these defenses was Plaintiffs' comparative negligence and fault, Plaintiffs' failure to mitigate damages, laches, and res judicata.[18]

This Court subsequently dismissed both Plaintiffs' FDCPA and LUPTA claims under the *Rooker-Feldman* doctrine.[19] Relying on several Fifth Circuit cases, this Court held that challenges deriving from a foreclosure order or challenges regarding debt collection practices that led to the foreclosure are "inextricable intertwined" with the state court's judgment, thus depriving federal courts of subject matter jurisdiction.[20] Specifically, this Court noted that when the state court granted the foreclosure, it necessarily had to find that the procedural requirements for such an action were satisfied, and to pursue damages under the theory that alleged procedural defects caused injury would require this Court to review a final state court judgment, which it may not do.[21]

### C. The Pending Motion

Plaintiffs have moved under Rule 59(e) of the Federal Rules of Civil Procedure for this Court to alter or amend its prior order dismissing Plaintiffs' claims, contending that this Court can and should exercise jurisdiction over Plaintiffs' FDCPA claims.[22] In support of their motion, Plaintiffs claim that alteration or amendment is warranted under Rule 59(e) in order to correct a clear error of

---

[18] Rec. Doc. 8.

[19] Rec. Doc. 18.

[20] *Id.* at pp. 11-12.

[21] *Id.* at p. 13.

[22] Rec. Doc. 20-1 at p. 2.

law.[23] To demonstrate this alleged error, Plaintiffs principally rely upon two cases.

First, Plaintiffs cite the United States Court of Appeals for the Sixth Circuit in *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*[24] Plaintiffs maintain that the *Todd* court confronted a similar challenge to the methods employed to obtain garnishment relief from state court, and the Sixth Circuit declined to find the *Rooker-Feldman* doctrine applicable to the plaintiff's claims under the FDCPA, instead holding that the suit involved an "'independent federal claim.'"[25] Plaintiffs further allege that under prior case law*,* the *Rooker-Feldman* doctrine is not applicable unless the "sole purpose" of the action is to challenge the state court's foreclosure proceeding, which they argue is not the case here.[26]

Second, Plaintiffs cite *Brooks v. Flagstar, FSB*,[27] a case from the Eastern District of Louisiana, in support of the proposition that claims under the FDCPA are independent and do not implicate the *Rooker-Feldman* doctrine.[28] Plaintiffs contend that their situation in the pending case is analogous to that of the plaintiffs in *Brooks*, as Plaintiffs allege that they only seek to challenge Defendant's "misleading representations about its standing to enforce the debt" and not the validity of the debt itself.[29] Furthermore, Plaintiffs harken on language within *Brooks* that relies on an unpublished Fifth Circuit opinion and argue that the *Rooker-Feldman* doctrine is only applicable

---

[23] *Id.* at p. 1.

[24] 434 F.3d 432 (6th Cir. 2006).

[25] Rec. Doc. 20-1 pp. 3-4 (citing *Todd*, 434 F.3d at 434).

[26] *Id.* at p. 2.

[27] 2011 WL 2710026 (E.D. La. Jul. 12, 2011) (Vance, C.J.).

[28] Rec. Doc. 20-1 at p. 2.

[29] Rec. Doc. 20-1 at p. 4.

when the "sole purpose" of the action is to challenge the state court's foreclosure and seizure of the property.[30]

In opposition, Defendant argues that Plaintiffs' Motion to Alter or Amend Judgment should be denied because Plaintiffs have failed to establish a "clear error of law" as is required under Rule 59(e).[31] First, Defendant stresses that *Todd* is a Sixth Circuit opinion and, therefore, not binding on this Court and also notes that there are contrary Fifth Circuit cases on this point of law.[32] Regarding the opinion in *Brooks*, Defendant focuses on several factual differences that Defendant claims make the present case distinguishable.[33]

Chief among these differences, Defendant highlights that, in *Brooks,* the alleged wrongful actions did not involve a mortgage lender or loan officer, as the present case does; therefore, the suit involved non-parties to the state court foreclosure proceeding.[34] Furthermore, there the undismissed FDCPA claims only included parties who were not involved in the state court foreclosure judgment. However, most importantly, Defendant argues that the court in *Brooks* only retained jurisdiction over the FDCPA claims because they alleged misconduct occurring *after* the foreclosure sale and the actions were "related to conduct outside or after" the proceeding.[35] In contrast, Defendant points out that Plaintiffs' claims here arise directly from the foreclosure proceeding and the actions of

---

[30] *Id.* at p. 2 (citing *Brooks*, 2011 WL 2710026, at *4 (citing *Flores v. Citizens State Bank or Roma, Texas*, 132 F.3d 1457 (5th Cir. 1997))).

[31] Rec. Doc. 22.

[32] *Id.* at p. 3

[33] *Id.*

[34] *Id.*

[35] *Id.* at p. 4.

Defendant leading to the state court's judgment. Therefore, Defendant maintains that *Brooks* is distinguishable and cannot be construed to create a "clear error of fact or law"such as is necessary to warrant an alteration of the judgment.[36]

## II. Law and Analysis

### *A. Standard on Motion to Alter or Amend Judgment*

A Rule 59(e) motion "calls into question the correctness of a judgment,"[37] and courts have considerable discretion in deciding whether to grant such a motion.[38]  In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[39]  Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[40]

Rule 59(e) is "'not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[41] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law

---

[36] *Id.*

[37] *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

[38] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[39] *Id.* at 355-56.

[40] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[41] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

or fact or to present newly discovered evidence."[42]  "It is well settled that [such motions] should not be used . . . to re-urge matters that have already been advanced by a party."[43]

Alteration or amendment, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[44] and the motion must "clearly establish" that alteration or amendment is warranted.[45]  When there exists no independent reason for alteration or amendment other than mere disagreement with a prior order, alteration or amendment is a waste of judicial time and resources and should not be granted.[46]

*B. Analysis*

As explained above, a motion to alter or amend is not to be used to re-urge matters that have already been advanced, and a mere disagreement with a prior order is insufficient to merit alteration. Instead, a party must clearly establish that alteration is warranted. Here, Plaintiffs have failed to meet this burden, and, therefore, an alteration of the judgment is inappropriate.

The *Rooker-Feldman* doctrine applies and the cause of action is deemed "inextricably intertwined" when the injury is a result of the state court judgment itself.[47] Here, Plaintiffs cite the

---

[42] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[43] *Helena Labs.*, 483 F. Supp. 2d at 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[44] *Templet*, 367 F.3d at 478-79 (citation omitted).

[45] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[46] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[47] *Garry v. Geils*, 82 F.3d 1362, 1366 (5th Cir. 1996)

Sixth Circuit in *Todd* to argue that their claims in the present suit are not "inextricably intertwined" with the prior state foreclosure proceeding. However, out-of-circuit precedent is not binding on this Court, and its persuasive value is only slight when contrary to Fifth Circuit jurisprudence; importantly, the Fifth Circuit has rejected Plaintiffs' construction of "inextricably intertwined" in this context. In *Hale v. Harney*, the Fifth Circuit iterated the principle that district courts may not review alleged errors of the state courts because such review is inextricably intertwined with the state court proceeding.[48] In fact, the Fifth Circuit has explicitly refused to allow a challenge to the merits of a state foreclosure determination because it would amount to a "collateral attack on the final judgment of a state court."[49] Yet this is exactly what Plaintiffs seek, themselves stating, "Plaintiffs argued that their mortgage note was not properly endorsed to BNY and therefore, BNY was not entitled to the writ of seizure and sale."[50] As this Court previously stated, the state court necessarily had to find these procedural requirements satisfied in order to grant the foreclosure.[51] Despite the protestations of Plaintiffs, their claims are not independent of the foreclosure ruling. Therefore, any review of the procedures required to grant the foreclosure would amount to a collateral attack on the state court judgment.[52] These claims belong in the appropriate state appellate court, not in federal district court.[53]

Furthermore, Plaintiffs' reliance on *Brooks* is insufficient to demonstrate a "manifest error"

---

[48] 786 F.2d 688, 691 (5th Cir. 1986).

[49] *Pease v. First National Bank*, 335 F. App'x. 412, 415 (5th Cir. 2009).

[50] Rec. Doc. 20-1 at p. 3.

[51] Rec. Doc. 18 at p. 13.

[52] *Id.*

[53] *Hale*, 786 F.2d at 691.

9

in two key ways. First, as *Brooks* is from another district court, it is not controlling and even if a conflict existed, it would not create a "manifest error of law." Regardless, the holding and reasoning in *Brooks* are not contrary to this Court's previous ruling in the present matter; in fact, the language in *Brooks* comports with this Court's previous ruling.

In *Brooks*, the plaintiffs brought claims alleging that the defendant abused the executory process law by failing to meet the procedural requirements under Louisiana law and for injuries caused later from improper debt collection practices.[54] Contrary to Plaintiffs' representation, the court applied the *Rooker-Feldman* doctrine to the plaintiff's claims that the defendant abused Louisiana's executory process laws, finding that such a challenge would "constitute direct attacks on the state court judgment and seek a thorough review of the state court foreclosure procedures."[55] The defendant's alleged deficiencies in procedural requirements included the failure to serve plaintiffs with proper notice of foreclosure or demand for the default amount.[56] However, as Plaintiffs do note, the court declined to extend *Rooker-Feldman* to the plaintiffs' claims arising under the FDCPA.[57] These claims involved the defendant's alleged failure to provide documentation of the debt upon request, impermissibly threatening the plaintiffs with immediate eviction, harassing the plaintiffs, and attempting to evict the plaintiffs before a required ninety-day period.[58] The court found *Rooker-Feldman* inapplicable to these claims because these claims did not challenge the

---

[54] *Brooks*, 2011 WL 2710026, at *4

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

10

validity of the debt or "stem from the foreclosure order," but rather they stemmed from the collection practices of the defendant, therefore constituting an independent claim.[59] In *Brooks*, the court applied the *Rooker-Feldman* doctrine to the plaintiffs' complaints where they alleged that the defendants "abused executory process by failing to meet the requirements for such practice under Louisiana law," which plaintiff alleged made the writ of seizure and sale improper.[60] The *Brooks* court held such challenges to be direct attacks on the state court foreclosure process, upon which district courts lack jurisdiction.[61] The court only declined to apply *Rooker-Feldman* to the post-judgment collection practices of the defendants because such claims did not question the validity of the debt.[62] Furthermore, all of the cases cited in *Brooks* in support of allowing the FDCPA claims to remain also only challenged the method of debt collection after the state court issued the foreclosure, and not the procedures to obtain the judgment or debt itself.[63]

Additionally, Plaintiffs' argument that the *Rooker-Feldman* doctrine only applies when the "sole purpose" of the case is to challenge the state court's foreclosure order is flawed in several respects. The language of "sole purpose" originates in *Flores*, however, the statement was in the context of noting that the claims at issue in that case had the sole purpose of attacking the state court's judgment.[64] The *Flores* court never explicitly stated that a suit *must* have the "sole purpose"

---

[59] *Id.* *4-*5.

[60] *Id.* at *4.

[61] *Id.*

[62] *Id.* ("The Court has jurisdiction over these claims to the extent that they do not stem from the foreclosure order.").

[63] *Id.*

[64] *Flores*, 132 F.3d at 1457.

11

of attacking the state court judgment in order to implicate the *Rooker-Feldman* doctrine. Plaintiffs, as a result, have over-stated *Flores*' holding on when the *Rooker-Feldman* doctrine applies. Further, to the extent that the holding in *Brooks* even comports with Plaintiffs' reading of *Flores* on this issue, as discussed above, *Brooks* is not binding in the present case. In contrast, and as this Court has previously identified,[65] there are several cases from the Fifth Circuit that support the application of the *Rooker-Feldman* doctrine in precisely this context.[66]

Nonetheless, Plaintiffs attempt to have this Court exert subject matter jurisdiction over precisely the types of claims that the *Brooks* court refused to hear on the basis of the *Rooker-Feldman* doctrine. Plaintiffs challenge the method by which the Defendant obtained the writ of seizure and sale and further assert that Defendant "was not entitled" to such relief.[67] The Fifth Circuit and the Eastern District of Louisiana have both ruled that such attacks are inextricably intertwined because they would be direct attacks on the state court judgment and may only be litigated within the state court system.[68] For this reason, it cannot be said that this Court's prior order was a manifest error of law.[69]

---

[65] Rec. Doc. 18 at pp. 12-13.

[66] *See e.g., Pease*, 335 F. App'x. at 415; *Garry*, 82 F.3d at 1366; *Hale*, 786 F.2d at 691.

[67] Rec. Doc. 20-1 at p. 3.

[68] *Hale*, 786 F.2d at 691; *Todd*, 2011 WL 2710026 at *4.

[69] Plaintiffs have not asserted any other basis for alteration or amendment; they have not argued the discovery of new evidence, that the judgment must be altered to prevent manifest injustice, or that alteration is justified by an intervening change in controlling law.

### III.  Conclusion

This Court previously found that the claims asserted here are inextricably intertwined with those asserted in the prior state proceeding and resulting judgment, such that this Court lacks jurisdiction over the present matter because, in order to address Plaintiffs' claims alleged here, this Court would be required to review a state court judgment, in contravention of the *Rooker-Feldman* doctrine.  This Court now finds that Plaintiffs have failed to carry their burden to demonstrate that this Court's previous opinion was manifestly erroneous or that the previous order should be altered for any other appropriate reason. Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Alter or Amend Judgment[70] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this   9th   day of August, 2012.

                                      **NANNETTE JOLIVETTE BROWN**
                                      **UNITED STATES DISTRICT JUDGE**

---

[70] Rec. Doc. 20.